```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                       DISTRICT OF VERMONT
```

| | |
|---|---|
| Stephen Bain,                        : | |
|     Plaintiff,   : | |
|                                      : | |
|     v.           : | File No. 2:08-CV-110 |
|                                      : | |
| Robert Hofmann, Andrew               : | |
| Pallito, Carol Callea,               : | |
| Peter Potanas, Howard                : | |
| Brooks, Matthew Viens,                : | |
| Vermont Department of                : | |
| Corrections, John                    : | |
| Ferguson, Corrections                : | |
| Corporation of America,              : | |
| Lee Adjustment Center,               : | |
| Randy Stovall, Donna                 : | |
| Stivers, David Frye,                 : | |
| Donald Edwards, Dr. James            : | |
| Hurm, Dr. Lippmenn, James            : | |
| Ingerson, John and Jane              : | |
| Doe,                                 : | |
|     Defendants.  : | |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 21, 24 and 28)

Plaintiff Stephen Bain, a Vermont inmate proceeding *pro se*, brings this action claiming that he was denied adequate medical and dental care while incarcerated out of state. He also alleges a conspiracy to deprive him of his Bible and legal materials, and that he was wrongfully exposed to second-hand smoke. The defendants have moved to dismiss the complaint for failure to state a claim and for improper venue. For the reasons set forth below, I recommend that all claims against the Vermont defendants be DISMISSED, and

that the remainder of this case be TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

## Factual Background

For purposes of the pending motions to dismiss, the facts alleged in the complaint will be accepted as true. During the relevant time period, Bain was a Vermont inmate incarcerated at the Lee Adjustment Center ("LAC"), a privately-owned prison in Beattyville, Kentucky. Corrections Corporation of America ("CCA") owns LAC, and the Vermont Department of Corrections ("DOC") contracts with CCA to house Vermont inmates at the Kentucky facility.

Bain reportedly suffers from chronic pain as a result of three automobile accidents since 1985. His physical problems include degenerative disk disease, arthritis, and chronic neurologic pain. He also suffers from symptoms of traumatic brain injury, including increased sensitivity to light and sound, difficulties with memory and concentration, slow comprehension and migraine headaches.

Bain claims that he received effective medication for pain before the DOC shipped him out of state. Specifically, he alleges that he met with Dr. Daniel Graubert, a specialist at the Spine Center at Dartmouth-Hitchcock

Medical Center in Lebanon, New Hampshire on June 15, 2006, and that Dr. Graubert recommended "methadone and imitrix." (Paper 3 at 7). It is alleged in the complaint that Bain's treating physician while in Vermont, Dr. Mitchell Miller, prescribed adequate medication, perhaps consistent with Dr. Graubert's recommendation.

After he was transported out of Vermont, Bain was first incarcerated in a CCA-owned facility in Oklahoma. In September 2007, he was shipped to Kentucky. During his time in Kentucky, Bain alleges that he has received "no meaningful medical care and/or treatment for any of his serious chronic medical conditions." Id. at 6. He claims that Dr. James Hurm, the medical director at LAC, and Dr. Lippmenn, also a physician at LAC, removed him from the course of treatment recommended by Dr. Graubert and prescribed by Dr. Miller. He further claims that his dental care has been inadequate due to a "directive . . . only offering extraction." Id. at 9.

Bain alleges that he filed grievances with respect to his lack of medical care, and had conversations with defendants Stovall, Stivers and Frye, each of whom are employed at LAC. He also claims that he has asked DOC

Commissioner Hofmann and Assistant Commissioner Pallito for a transfer. According to Bain, the fact that none of these defendants offered him relief "constitutes deliberate indifference." Id. at 9.

Bain's next claim is that he was deprived access to his legal files and his Bible for a period of time following his prison transfers. He concedes, however, that he is currently in possession of his Bible, and that his legal materials are in a "property room." Id. at 10. Although he does not explain the connection to Vermont, he claims that various Vermont state employees, including at least one Assistant Attorney General, conspired to deny him access to his materials.

Within this same cause of action, Bain contends that LAC personnel have limited his access to the law library. He claims that in order to access the library, he is forced to sacrifice recreation time or religious services. He also claims that a law librarian in Kentucky attacked him.

Bain's final claim is that he has been exposed to "copious quantities of unwanted, surplus, second-hand cigarette smoke." Id. at 12. He blames LAC personnel for this exposure, and claims that it violated his rights under

the Eighth and Fourteenth Amendments.  For relief, Bain is seeking compensatory and punitive damages.[1]

## Discussion

The defendants argue that dismissal of this case is warranted, and that venue in this Court is improper.  The venue question centers on the fact that most of the alleged wrongdoing took place at LAC in Kentucky.  The defendants can be divided into two geographic groups: those from Vermont and those connected to the LAC in Kentucky.  Their motions to dismiss offer distinct arguments for each group: the Vermont defendants offer specific defenses to liability, while the others argue improper venue.  The Court will address each set of arguments in turn.

I. Vermont Defendants

Defendants Robert Hofmann, Andrew Pallito, the Department of Corrections, Carol Callea, Peter Potanas, Howard Brooks, and Matthew Viens (collectively "Vermont

---

[1] In addition to his constitutional claims, Bain alleges that his treatment violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (2000).  "It is clear however, that any such claims are secondary, if not superfluous." Day v. Lantz, 487 F. Supp. 2d 30, 32 (D. Conn. 2007) (dismissing ADA claim brought in conjunction with Eighth Amendment claim).  Bain's claims of inadequate medical care are plainly addressed by the Eighth Amendment, and his other claims with respect to his legal and religious materials are similarly covered by the Constitution.

5

defendants") have moved to dismiss on a number of grounds, including official capacity immunity, lack of personal involvement, and failure to state a claim. On a motion to dismiss, the Court must accept as true the factual allegations in the complaint and must draw all inferences in the plaintiff's favor. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). To survive dismissal, a complaint must plead enough facts to be plausible on its face. Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)).

   A.  Official Capacity Immunity

   With respect to any claims for damages, Vermont defendants sued in their official capacities, as well as the DOC, are protected by the State's sovereign immunity. Because of Vermont's sovereign immunity, the Eleventh Amendment prohibits suits in federal court by citizens against the State and its agencies, absent a waiver of immunity and consent to suit by the State or a valid abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993); Pennhurst State Sch. and

Hosp. v. Halderman, 465 U.S. 89, 97-100 (1984). The Eleventh Amendment also bars claims against State employees sued in their official capacities. See Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2002); Al-Jundi v. Estate of Rockefeller, 885 F.3d 1060, 1065 (2d Cir. 1989).

Relevant to this case, there has been no waiver of Vermont's sovereign immunity and no abrogation of that immunity by Congress. Indeed, the Vermont legislature has preserved the State's immunity under the Eleventh Amendment. See 12 V.S.A. § 5601(g). Accordingly, Bain's claims against the DOC, and against the individual Vermont defendants in their official capacities, should be DISMISSED.

B. Personal Involvement

With respect to individual capacity liability, Commissioner Hofmann and Assistant Commissioner Pallito argue that they were not personally involved in any allegedly unconstitutional conduct. Personal involvement is required for an award of damages under § 1983. Moffit v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir. 1991); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). In his complaint, Bain alleges that it was these defendants' "ultimate responsibility among other things to supervise

Department staff . . . [to] guarantee Plaintiff's safety, [ensure that] his serious medical needs do not go unmet, . . . and [ensure that] his rights protected by the strictures of the United States Constitution, are in no wise [sic] abrogated." (Paper 3 at 2-3). He also claims that he communicated to Hofmann and Pallito his desire for a transfer, "to no avail." Id. at 9.

To the extent that Bain is suing Hofmann and Pallito in their capacities as supervisors, their lack of direct personal involvement does not necessarily put an immediate end to his claim. Courts have long held that although "respondeat superior cannot form the basis for a § 1983 claim," Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998), the personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who

8

committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. See Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In this case, Hofmann and Pallito could not have been directly involved in any wrongdoing, since all of the allegedly unconstitutional conduct took place in Kentucky. Bain does claim that he notified these defendants of his desire for a transfer, thereby putting them on notice of his claims. Nonetheless, merely putting a Corrections supervisor on notice through a letter does not render that supervisor liable for the underlying conduct. See, e.g., Applegate v. Annucci, 2008 WL 2725087, at *18 (N.D.N.Y. July 10, 2008); Thomas v. Coombe, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998); Greenwald v. Coughlin, 1995 WL 232736, at *8 (S.D.N.Y. Apr. 19, 1995) ("it is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations") (citations omitted).

9

Furthermore, Bain does not allege that Hofmann or Pallito are responsible for policies or customs that have resulted in his mistreatment. Indeed, with respect to his medical care, Bain implies that while he was incarcerated in Vermont, his medical care was acceptable. It was only after he was shipped out of state that the alleged problems arose.

With respect to supervision, Bain cites no support for the proposition that Hofmann and Pallito are liable for actions taken by physicians who have been retained by CCA in Kentucky. The DOC has a contractual relationship with CCA, and Bain has no standing to enforce the terms of that contract. See Bain v. Hofmann, 2008 WL 149015, at *5 (Jan. 10, 2008). Moreover, it has been held that such a contract does not create supervisory liability for state Corrections personnel. Means v. Lambert, 2008 WL 281551, at *5 (W.D. Okla. Jan. 31, 2008). I therefore recommend that all claims against defendants Hofmann and Pallito in their individual capacities be DISMISSED.

C. Access to the Courts and First Amendment Claims

The remaining Vermont defendants are Carol Callea, Howard Brooks, Mathew Viens, and John and Jane Doe. Callea is alleged to be an "access to the courts/legal education

attorney." (Paper 3 at 3). The roles of the other defendants are not specified, although Attorney Viens has appeared before this Court in other matters in his role as an Assistant Attorney General. The claims against these defendants are that they violated Bain's constitutional rights by denying him access to his Bible and legal materials.

The defendants first argue that Bain's access to the courts claim is insufficient. The allegations in the complaint state that defendants Potanas, Brooks, Viens, and Doe were "members of a conspiracy to obstruct Plaintiff's access to the courts." (Paper 3 at 3). The only specifics he offers with respect to this alleged conspiracy are that, when he arrived at a CCA facility in Oklahoma, defendants Potanas, Brooks, Viens and Callea "would not allow Plaintiff access to and/or possession of" his legal files. Although it appears from the complaint that each of these defendants works in Vermont, Bain does not explain how they succeeded in barring him from accessing his files. In his conclusion, Bain claims generally that all defendants have "conspired to obstruct Plaintiff's access to the courts causing him prejudice to ongoing litigation, and impeding meritorious

11

constitutional claims involving civil rights and liberty issues." Id. at 14.

The defendants argue that Bain has failed to demonstrate how his access to the courts was impeded. In order to succeed on his claim, Bain would need to show that "a nonfrivolous legal claim had been frustrated or was being impeded." See Lewis v. Casey, 518 U.S. 343, 353 (1996). His complaint makes no such showing, suggesting only in conclusory fashion that "meritorious" claims have been prejudiced. Although the Court must construe Bain's complaint broadly, his conclusory allegations of a conspiracy to deny him access to the courts are insufficient to survive the motion to dismiss. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); Leon v. Murphy, 988 F.2d 303, 311 (2d Cir. 1993) (a "complaint containing only conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss").

Bain's claim that he was denied his Bible is equally meritless. Bain essentially claims that each time he was transferred to a new facility, his belongings did not follow immediately. He again fails to allege that any Vermont

defendants played a role in packaging or shipping his belongings, or that they had any involvement in denying him access to his Bible. Accordingly, Bain's claims with respect to his Bible and his legal materials, insofar as they seek to hold the Vermont defendants liable for wrongful acts, should be DISMISSED.

II. Venue

The remaining defendants have moved to dismiss for improper venue. When a case is commenced in an improper venue, Section 1406(a) requires the Court to either dismiss it or, "if it be in the interest of justice," transfer the case to a district in which it could have been brought. 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993). "On a Rule 12(b)(3) motion to dismiss based on improper venue, the burden of showing that venue in the forum is proper falls on the plaintiff." Indymac Mortgage Holdings, Inc. v. Reyad, 167 F. Supp. 2d 222, 237 (D. Conn. 2001).

In cases involving questions of federal law, such as Bain's civil rights claims under § 1983, venue lies in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b); see also Amaker v. Haponik, 198 F.R.D. 386, 391 (S.D.N.Y. 2000).

Subsection (1) of § 1391(b) does not apply here, since the defendants do not all reside in the same district. The next subsection of § 1391(b) determines venue based upon where "a substantial part of the events or omissions giving rise to the events occurred . . . ." 28 U.S.C. § 1391(b)(2). The Second Circuit has instructed lower courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005). In this case, the principal events took place at the correctional facility in Kentucky. Accordingly, venue is most appropriate in that state under subsection (2). See Lee v. Corrections Corp. of America, 2007 WL 4225405, at *2-*3 (D. Hawaii Nov. 26, 2007); Basargin v. Corrections Corp. of America, 2005 WL 2705002, at *2 (D. Alaska Oct. 17, 2005);

Sadler v. Rowland, 2004 WL 2061127, at *5 (D. Conn. Sept. 13, 2004) (action brought by Connecticut prisoner against prison personnel in Virginia transferred to Virginia). Because this action could have been brought in Kentucky, subsection (3) § 1391(b) is inapplicable. See Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction 2d § 3802.1 n. 26 (Supp. 2003) (citing F.S. Photo, Inc. v. Picturevision, Inc., 48 F. Supp. 2d 442, 448 (D. Del. 1999)).

Having determined that venue is most appropriate in Kentucky, the Court must decide whether the case should be dismissed, or whether the interests of justice call for a transfer. "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 435 (2d Cir. 2005) (citation omitted). In making this determination, consideration should be given to the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heinman, 369 U.S. 463, 466-67 (1962).

If the Court were to dismiss this case without prejudice, Bain's claims might be barred in Kentucky by the

applicable statutes of limitations, as several of the alleged events took place over one year ago. See Collard v. Kentucky Bd. of Nursing, 896 F.2d 179, 182 (6th Cir. 1990). Accordingly, I find that a transfer is in the interests of justice, and recommend that this case be TRANSFERRED to the United States District Court for the Eastern District of Kentucky.

III. Motion for Joinder of Parties

Bain recently moved to join two additional physicians who have treated him at LAC. Because I am recommending that all claims related to Kentucky defendants be transferred out of this Court, the motion for joinder is DENIED without prejudice so that it may be brought again in the appropriate venue.

Conclusion

For the reasons set forth above, I recommend that the motion to dismiss defendants Callea, Potanas, Brooks, Viens and the Vermont Department of Corrections (Paper 24) be GRANTED, and that the motion to dismiss defendants Robert Hofmann and Andrew Pallito (Paper 21) also be GRANTED. As to the motion to dismiss the remaining defendants (Paper 21), I recommend that the motion be GRANTED to the extent

16

that it seeks a transfer of venue, and DENIED to the extent that it seeks the dismissal of all claims.  Consistent with this latter recommendation, I further recommend that the claims against the remaining defendants be TRANSFERRED to the United States District Court for the Eastern District of Kentucky pursuant to 28 U.S.C. § 1406.

Bain's motion for joinder of parties (Paper 28) is DENIED without prejudice.

Dated at Burlington, in the District of Vermont, this 16th day of December, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).